## UNION CENTRAL LIFE INS. CO. v. WILLIAMS.

### No. 6871.

Circuit Court of Appeals, Fifth Circuit.

May 25, 1933.

Eugene P. Locke and Ralph Randolph, both of Dallas, Tex., for appellant.

H. T. McGown and Austin F. Anderson, both of Fort Worth, Tex., and Chas. Gibbs, J. W. Stovall, and H. O. Williams, all of San Angelo, Tex., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

Nannie May Williams recovered judgment against Union Central Life Insurance Company on a policy of insurance for $10,000 on the life of her husband, Peter Hardy Williams. The following facts appear: An annual premium of $449.10 was due each June 10th. That for 1930 was paid out of a loan or advance of $848 made against the policy, the insured borrowing at the same time $1,643.63 from the company's general agents personally for which he gave them his note. Just before June 10, 1931, the company sent Williams a notice, which he received, stating that a premium of $449.10 would be due on that date, subject to a dividend

reduction of $74.80, leaving $374.30, and that unless payment should be made the policy would be voided except as to values provided therein, but the premium would be accepted within thirty-one days from its due date. The notice also stated that agents are not authorized to countersign receipts unless signed by some officer of the company, to grant permits, make or alter contracts, waive forfeitures, or make any alterations of a renewal receipt. No other direct communication occurred between him and the company. He did nothing about the premium or the dividend of $74.80 within the thirty-one days of grace ending July 11, 1931. The general agents sought to interest him in an arrangement by which he might surrender this and other policies which he had with the company so as to pay the premium on and the loan against one of $15,000, and pay them $500 on their note. Of this negotiation the company had some knowledge, for it furnished surrender forms and statements of the surrender values of the policies, but on September 1st Williams definitely refused the arrangement, stating to the agents that he would sign no surrenders with any part payable to them; that it was a crooked deal and he was going to have every nickel applied toward paying these policies as far as it would carry them. This decision and statement was on September 14th communicated to the company, the agents then returning to it a check for $556.50 for dividends on the policies which the company on September 9th had sent to them to be delivered to Williams. The agents wrote that they were suing Williams on his note for $1,643.63, and garnisheeing the company for the dividends. On September 18th before garnishment was actually made the attorney for the agents got from Williams an order on the company to pay the dividends to the agents, and on September 19th this order was sent to the company, and on September 28th it paid the dividends over accordingly. On October 7th the company mailed Williams a notice that on account of failure to pay the premium due June 10th the policy, in accordance with the terms of the advance secured by the policy, became null and void and had been canceled, and that the advance agreement was marked paid thereby. Williams received but never opened this letter. He had been ailing since spring, was kicked in the stomach and trampled upon by a bull on August 16th, was thereafter afflicted with constant hiccoughs and became ill, and it is contended became mentally affected. On September 17th he had all his teeth extracted, and a little later was diagnosed as having cirrhosis of the liver, and died October 15, 1931. Mrs. Williams tendered to the company repayment of the $74.80 dividend on this policy which had been included in the payment to the agents, which tender the company refused, and she afterwards pleaded that Williams was mentally incompetent on September 18th when he signed the dividend order and that it was obtained through fraud and mistake.

The controlling assignment of error is on the court's refusal to instruct a verdict for the defendant. We have not stated the evidence relating to the making of the dividend order of September 18th, nor do we pass upon its sufficiency to show insanity, fraud, or mistake, because we think liability on the policy depends upon the situation on July 11th, the last day of grace for paying the premium. The transaction of September 18th controls only the question whether the dividend belongs to the agents or to Williams' estate. The terms of the insurance are fixed by the policy, by the statutes under which it was made, and by the advance agreement. It is not disputed that under all of these the policy became void on the thirty-first day after June 10, 1931, for nonpayment of premium unless saved by the provisions for extended insurance; that the reserve or surrender value of the policy at that date was $910 and the advance with interest was $898.-88, the difference being insufficient to extend the insurance even to the last grace day; but that if the dividend of $74.80 be applied to purchase extended insurance or to reduce the advance against the policy the extension would reach beyond the date of death. The case therefore turns upon the disposition of the dividend. Mrs. Williams contends that it is one of the policy values which under the provisions of the statute and the policy are automatically to be applied in extended insurance if no other option be exercised; or, if not, that the company should have applied it to reduce the advance against the policy, and thus increase the available reserve. The company contends that the dividend is different from the reserve, and is governed by different policy stipulations, and that in the absence of action by Williams it could only be held for him in cash.

■ A dividend is in its nature clearly to be distinguished from the reserve on a policy both from the standpoint of the insurer and the insured. The reserve is usually required to be set up by law, as well as by the dictates

of sound business. Very generally stated, it represents the excess charge in level premiums required to take care of the increasing risk of death as the insured grows older, and the accumulation increases with each premium paid. It is accurately computable, and is considered to inhere in and belong to the policy. Policy reserves from the standpoint of the insurer are a fixed liability required to be offset by assets in order to maintain solvency. A dividend is a profit, in its nature uncertain, which accrues when by reason of good management, good risks, or the like, the insurer's business shows results above death losses, expenses, and reserves. It is a distribution from a distributable surplus. Dividends normally belong to the stockholders, which in a mutual company are the policyholders, but the insured though not a stockholder may by contract be allowed to participate. This share in profits more naturally belongs to the insured than to the beneficiary, and is a return to him of a part of his premium which the year's results have shown was not necessary to have been paid to maintain the insurance with its legal reserve. Some decisions on policy provisions less definite than those of the policy in suit have confused dividends and reserves, and have applied dividends along with the reserve to extend the insurance. Such is Atlantic Ins. Co. v. Pharr (C. C. A.) 59 F.(2d) 1024. The present policy most carefully distinguishes them and disposes separately of each, the one under the heading "Premiums and Dividends," and the other under the heading "Policy Values." Under the former heading, after dealing with premiums and grace on them, it is declared: "This policy shall participate in profits as apportioned by the Directors. * * * Dividends shall be declared annually during its continuance." Under "Dividend Options" it is provided that: "Dividends may be withdrawn in cash or applied to the payment of premiums, or left to accumulate with interest at 3% * * * or applied to the purchase of paid-up participating additions to the policy * * *." These options are plainly to be exercised by the insured and not by the company. Applicable when no option is exercised is paragraph 12: "Automatic Disposition. On payment of the premium, or on the policy anniversary if no other premium is payable, if no other option shall be elected, the dividend then due shall be applied to the purchase of paid-up additions. In the event of the death of the insured during the days of grace, the current premium being unpaid, if no other option has been elected, or if the policy shall lapse, the dividend then due shall be paid in cash. At the death of the insured during the continuance of the policy the pro rata part of the dividend for the current policy year shall be paid in cash." Under the head of "Policy Values," the basis of the reserve is fixed and the surrender value for each year is set forth in a table. Options are provided to the owner of the policy to use that value in: (1) Extended participating insurance; (2) paid-up insurance; (3) loan or advance on the security of the policy; (4) cash on surrender. On failure to pay a premium, no option being exercised, the surrender value is to be applied automatically in extended insurance as in option 1. In that option it is additionally stated: "Accumulations of dividends at interest may be applied to increase the term of extension." These provisions make it clear that in this contract reserve or surrender value and dividends are discriminated and separately contracted about. It will be noticed that in the options touching dividends the investment of them in extended insurance is not mentioned, though a paid-up addition to the policy is. But in the first option touching reserves it is stated that *accumulations* of dividends at interest *may* be applied to increase the term of extension. Assuming without deciding that this may cover a single dividend just declared, we think the language means that the insured may elect so to use it, not that the company must so apply it. The latter meaning is not expressed by the words used, and would conflict with the provision touching a recently declared dividend, that if the policy shall lapse without option exercised the dividend then due shall be paid in cash. The provisions taken together mean that when a dividend is declared the insured may elect to use it as a credit on his next premium or may buy a paid-up addition to his policy, or take it in cash, or leave it on interest subject to withdrawal at any time; and if he does neither but pays his premium otherwise, the dividend is to be laid out in a paid-up addition to the policy; but if he dies during the grace period before paying his premium and without electing any option, the dividend is to be paid in cash; or if the policy lapses for nonpayment of premium the dividend is to be paid in cash, but he may direct it to be used in extended insurance. In the last-stated contingency, that is lapse for nonpayment of premium, which happened in this case, the surplus reserve, no option as to it having been exercised, went automatically to extended insurance, but the dividend, supposing it capable of being considered "an

accumulation of dividends at interest," did not extend the extension for want of any direction by the insured thus to use it, but remained payable in cash, a fixed debt due to the insured.

■ We are told that these provisions ought to be construed against the company and in favor of the insured. We do not think them so ambiguous as to require any application of that rule. The lapse happened on failure to pay a premium of $447.10. Williams was then in fair health and it was not likely he would soon die. The dividend was under the contract cash belonging to him which the company could not lay out in extended insurance without his direction. Had it done so, and had Williams survived the extension purchased, he could have sued for his misapplied cash. It was for him to say what he would do with the dividend, whether on July 11th he preferred to buy extended insurance for a few months or to save this money for other uses. He said nothing; it remained cash due him.

■ It is urged that the company ought to have applied the dividend to reduce the advance against the policy so as to increase the reserve available to buy extended insurance. The policy requires no such application. The advance agreement does not pledge the dividends nor even purport to create a debt which might be offset against the dividend. It reads: "In consideration of an advance of $858.00 by the Union Central Life Insurance Company, the receipt of which is hereby acknowledged, I hereby assign to and deposit with said Company as sole security for said advance and interest, its policy No. 940547 on the life of Peter H. Williams, together with the paid-up additions thereto, if any." It is stated therein: "This advance may be paid in full or in part at any time." But there is no promise by Williams to pay it otherwise than from the policy on its forfeiture or maturity, nor any authority to the company to apply any other credit to it. That such a contract creates no debt but is a mere anticipatory collection of the reserve due on the policy is established in Board of Assessors of Orleans Parish v. New York Life Insurance Co., 216 U. S. 517, 30 S. Ct. 385, 54 L. Ed. 597. We do not think the company had the duty to apply the dividend in part payment of this advance without the request of Williams to do so.

It is next said that the dividend was in fact applied to the advance by the company because in the negotiation which went on between the agents and Williams about surrendering this and other policies and maintaining the one for $15,000 the company had sent to the agents a statement of the surrender value of the policy in suit which showed the dividend, $74.80, applied as a credit and a balance of $81 which was due against the $15,000 policy charged as a debit. This statement, sent with statements of the other policies whose surrender was to free the $15,000 policy, was only a suggestion of what could be done, not a declaration of what had been done. It did not propose to credit the $74.80 without charging the $81 to the policy in suit. Whatever proposal it did make was rejected by Williams on September 1st, and became of no effect.

■■ The agents in their letter of September 14th communicated to the company that on September 1st Williams, in rejecting the negotiations and refusing to pay anything to the agents, had said he wanted every nickel applied to carrying the policies. There were seven policies involved. This statement was too indefinite to serve as a direction to apply this dividend in any particular way. Moreover, it was too late for him to apply it to extend this policy for it had become void on July 11th, and could only be reinstated on payment of the premium with interest and satisfactory medical examination, and Williams since August 16 had been an ill man.

■ The notice of cancellation dated October 7th was not one given as provided in the advance agreement in consequence of the indebtedness and advances on the policy having exceeded the loan value of the policy, all premiums being paid, in which case the insured would have thirty-one days after the notice in which to make payments before his policy would be avoided on this ground. As stated in the notice, the policy had lapsed for failure to pay a premium. The notice was unnecessary to terminate the policy for this cause, and served only to inform Williams that the company understood that all negotiations were off and that the advance against the policy had been paid by the reserve on the policy.

■ It is lastly urged that the statute of Texas, Rev. Stats. of 1925, art. 4732, applies this dividend to extend the insurance. "No policy of life insurance shall be issued or delivered in this State * * * unless the same shall contain provisions substantially as follows: * * * 7. A provision which, in event of default in premium payments, after premiums shall have been paid for three full years, shall secure to the owner of

the policy a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy, *and on any dividend additions thereto.* * * * " The contention is that "dividend additions" means dividends, and that the reserve plus dividends is required to be laid out in extended insurance. This interpretation overlooks the word "on." The net value is to equal the reserve *on the policy* and *on any dividend additions thereto.* Two reserves are thus spoken of; one on the original policy and the other on additions to the policy theretofore purchased by dividends. The last words of subparagraph 6 just preceding are: "No provision herein shall compel any company to loan on any policy an amount greater than ninety-seven and one-half per centum of the face value thereof, including net dividend additions thereto." Here the words would be nonsense if construed to mean dividends, and so they would be in several other places where they occur in this same statute. The uncontradicted testimony in this case is that in the insurance world dividend additions are paid-up insurance in addition to the face of the policy and purchased with dividends. In this sense they are the equivalent of the expression "paid up additions" occurring several times in the policy before us in connection with dividends. We think this is the meaning intended by the Texas Legislature. The use of the word dividends in place of dividend additions in paraphrasing another part of this statute in First Texas State Insurance Co. v. Smalley, 111 Tex. 68, 228 S. W. 550, was not a construction in this respect of the statute, for no such question was before the court, but was apparently inadvertent. Similar words in a different setting were given the meaning contended for by appellee in a New York Statute in United States Life Ins. Co. v. Spinks, 126 Ky. 405, 96 S. W. 889, 103 S. W. 335, 13 L. R. A. (N. S.) 1053, but what we think is their proper meaning in the Texas statute was later given them by the same court in a contract, Mutual Life Ins. Co. v. O'Brien (Ky.) 116 S. W. 750, and in the statute of Kentucky in Jefferson v. New York Life Ins. Co., 151 Ky. 609, 152 S. W. 780.

Under the evidence discussed, the policy sued on was not of force after July 11, 1931, and the company only owed the declared dividend in respect thereof.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.