# ALICE P. MICKLESON AND ANOTHER v. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.[1]

November 3, 1933.

No. 29,495.

[1]Reported in 251 N. W. 1.

*Kellogg, Morgan, Chase, Carter & Headley,* for appellant.
*Nelson & Nelson,* for respondents.

*STONE, Justice.*

In this action on an old line life insurance policy there was a verdict for plaintiffs. Defendant appeals from the order denying its alternative motion for judgment notwithstanding or a new trial.

The policy, in which at the time of the death of the insured, Harry C. Mickleson, plaintiffs were the beneficiaries, was issued August 28, 1926. Originally for $10,000, it had been rewritten at $5,000. All premiums prior to one due August 28, 1931, were paid. On that date an annual premium of $149.95 matured. Concurrently, a dividend of $89.55 was credited to the policy. The premium was not paid within the 31-day period of grace. The insured applied for an extension to February 28, 1932, which was granted. To secure it, the dividend of August 28 was, in terms, "deposited" with defendant. With the consent of the insured and as far as necessary, it was applied to the payment of the premium charged during the period of the extension. For that purpose only $44.99 was used, so, at the expiration of the extension, there remained with defendant to the credit of the policy the remaining $44.56. The residue of the premium which matured August 28, 1931, was not paid. The insured died June 23, 1932. The defense is that the policy lapsed before that date. Plaintiffs deny the lapse and counter with a claim of waiver. Both issues went to the jury and were resolved for plaintiffs. The defense of lapse fails as matter of law, so we need not consider the question of waiver.

The policy carried the standard provisions concerning options as to use of dividends, cash surrender value, and application of the latter in case of lapse. See 1 Mason Minn. St. 1927, §§ 3399, 3402, and 3406. It stipulated that "in the event of default in the payment of any premium or instalment thereof after this policy has been in force three full years [as this one had been], if the insured * * * does not select one of said options within three

months of such default, the insurance shall be continued" automatically. The insured had made no election between his options under the policy.

■ If on February 28, 1932, when the six-months extension expired, there was to the credit of the policy, and so part of its cash reserve, the balance remaining of the 1931 dividend, that sum, $44.56, was adequate under the automatic extended insurance provision to carry the policy at its face value beyond the date of Mickleson's death. The status on February 28, 1932, of the item is fixed by policy and extension agreement. The latter provided that if the balance of the annual premium unpaid at the end of the extension continued in default the insurer should "retain out of the amount deposited an amount equal to 5 per cent of the premium if payable annually, * * * for each month from the original due date of the premium to the extended date." That accounts for the $44.99 of the August. 1931, dividend used as premium to carry the insurance during the six-months extension. The extension contract proceeds to say that if default in payment of the remainder of the annual premium continues beyond the extended time the $44.99 shall be retained by defendant, but that it "shall repay the balance to the depositor, and after such extended date all rights under the policy shall be the same as if this agreement and deposit had not been made, except that the time for electing any option upon lapse granted by the policy shall begin to run from the extended date and not from the due date of the premium."

The unused balance was not repaid. It remained with defendant as insurer. Under the contract of extension and the policy, reinstated and continued thereby, the sum so remaining, not having been otherwise applied, regained its character as dividend credit and so part of the policy reserve (if that status had been lost or temporarily changed) upon the expiration of the extension. That is because the policy itself was then expressly reinstated, and all rights thereunder declared, as of that date, to "be the same as if this agreement and deposit had not been made," with the exception already indicated and not now important.

By the extension agreement, the entire dividend had been "deposited" with defendant to apply on the premium needed to continue the policy. But only half of it, roughly speaking, was so required. In which category, dividend credit or deposit, was the other half when the extension expired? We assume that if it had been an actual deposit of new money it would have retained that character and so would not have become part of the policy reserve. But having been at the outset a dividend credit to that reserve, it rather obviously regained that status February 28, 1932, if in fact, during the extension, it had lost it. No other conclusion is tenable, because "all rights under the policy" were reinstated and continued as of that date. One of them, a very important one, was the right to have such credits automatically applied to the purchase of extended insurance. That right was the one which resolves this case for plaintiffs as matter of law. We could hold the contrary only by arbitrarily limiting the reinstatement of "all rights under the policy" by excepting therefrom the right of the insured to have the policy reserve automatically applied to the purchase of extended insurance in the absence of other election by him, of which there was none.

Apparently the diligence of counsel has not been equal to the task of finding a case exactly in point. The one said to be the nearest to it is Gardner v. National L. Ins. Co. 201 N. C. 716, 161 S. E. 308, 310, where recovery was denied. The policy, as far as the opinion discloses, did not contain such a provision for automatically extended insurance upon nonpayment of a premium as the one now before us. The insured did have the options (1) to withdraw dividends in cash, or (2) apply them in payment of premium, or (3) purchase participating paid-up insurance, or (4) to deposit them with the company at interest with the right of withdrawal at any time. In the absence of election by the insured, the policy provided that dividends would be held at interest as provided in the fourth option. The insured had in fact elected that his dividends be so held. It was contended for the plaintiff beneficiary that a dividend declared May 11, 1930 (the insured died August 24, 1930), was sufficient to purchase extended insurance

beyond the date of the insured's death. But he had elected, not only in his original application, but after notice of the dividend in question, that it should not apply to purchase of extended insurance, but should remain on deposit with the company at interest subject to his withdrawal. So, as said by the court [201 N. C. 719]:

"In view of the express provisions of the contract, * * * the defendant had no right, in law or in equity, to apply the dividend declared prior to May 11, 1930, and due at said date, as a payment on the semiannual premium due on May 11, 1930, or to the purchase of extended insurance."

That shows the distinguishing difference between that case and this. There an affirmative election by the insured was the operative thing which barred recovery. Here the absence of such election is the very thing which makes operative the automatically extended insurance option which results in recovery.

The meaning of policy and extension agreement, in application to the facts presented by this record, seems too plain to invoke any function of construction. The provision for automatically extended insurance came into our law as a remedial measure for the benefit of the insured. The language is not altogether that of insurers and so not to be enforced strictly against them on that ground. But, in view of the remedial purpose of the statute, the standard provisions are certainly not to be given strict construction against the insured. They are to be applied in a practical way to accomplish their purpose. So applied to the situation here presented, for the reason already stated, they impose liability on defendant as matter of law. "Dividends due the insured must be taken into consideration in determining the amount [of reserve] available to purchase extended insurance." 4 Cooley, Briefs on Ins. (2 ed.) 3819. For related cases see annotation in 6 A. L. R. 1400, and 47 A. L. R. 452.

■ We go now to the argument for defendant that the unused dividend had lost its character as a credit to the policy reserve because of an election by the insured. The first of such elections thus urged was that made by the extension agreement. As already

shown, it operated finally only upon the portion of the dividend used to carry the insurance during the period of the extension.

The second supposed election occurred after the expiration of the extension, February 28, 1932, when the insured applied for a policy loan, and in his application agreed that the unused dividend should go as a credit to him in connection with the proposed accommodation. But the negotiations were abortive. The loan was not made. So, whatever would have been the effect of the election to apply the dividend credit as intended if the loan had been made, there was, in fact, under that application, no election at all. There was but a mere offer of election if the loan had been procured. It was not, and the offer was not accepted, for reasons now immaterial. Such a conditional election, the condition not fulfilled, is no election.

The order appealed from is affirmed.

