## LAO MILDRED ELTON v. NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY.[1]

June 22, 1934.

No. 29,848.

[1]Reported in 255 N. W. 857.

See 191 Minn. 636, 253 N. W. 529.

*G. F. Mantz*, for appellant.

*Cobb, Hoke, Benson, Krause & Faegre* and *George D. McClintock*, for respondent.

### JULIUS J. OLSON, Justice.

Plaintiff has appealed from an adverse judgment entered in the court below pursuant to findings made by the court. As the findings are conclusive to a decision here, there being no settled case or bill of exceptions, a rather complete statement thereof is perhaps desirable.

On May 6, 1929, defendant issued its policy of insurance upon the life of George Elton and agreed to pay the beneficiary therein named, the plaintiff herein, who is his surviving wife, $5,000 upon being furnished proof of death of the insured, or, if he should come to his death through accidental means prior to reaching the age of 60 years, an additional $5,000, referred to as a double indemnity, thus making $10,000 in all. The consideration for the policy contract was a quarterly premium payment of $25.55 each. The insured, after making the first quarterly payment on May 6, 1929, made monthly payments thereafter at the rate of $8.66, which payments were accepted by the defendant in lieu of the contract provisions referred to. He continued making such monthly payments until and including November 6, 1930. The next monthly premium payment, due December 6, 1930, was not paid, nor were any further premium payments made, except that on January 17, 1931, the insured sent a money order to defendant in the amount of $8.66 to take care of the December, 1930, payment. The money order was received "and retained by defendant as a tender of payment of the premium due on December 6, 1930, the time for payment of which was extended to January 6, 1931, after the insured had defaulted

in such payment and after the policy had lapsed and on condition that the insured furnish defendant the health certificate sent to him and make application for reinstatement of the policy. No health certificate was ever furnished and no application for reinstatement was ever made by the insured; said policy was never reinstated; the money order of $8.66 was not accepted by defendant in payment of the monthly premium due by extension on January 6, 1931; and defendant has never waived a reinstatement of said policy."

The court further found:

"Said policy was a participating one under the terms of which (Section 7) it was provided:

"'7. ANNUAL DIVIDENDS. This policy shall participate in the surplus, and the Company will annually determine and account for the portion of the divisible surplus accruing thereon. The first distribution shall be contingent upon the payment of premiums for the second policy year, but subsequent dividends shall not be contingent upon the payment of future premiums. Such dividends shall be the property of the insured, and at his option may be

"'a. USED TO REDUCE THE COST EITHER (1) by withdrawal in cash, or (2) by application toward payment of premiums; or

"'b. APPLIED TO INCREASE THE AMOUNT OF INSURANCE BY the purchase of paid-up participating additions to the policy; or

"'c. APPLIED TO THE PURCHASE OF PURE ENDOWMENT ADDITIONS to the policy, payable at the end of the twentieth year if the insured is then living, but forfeited in the event of prior death; or

"'d. LEFT TO ACCUMULATE AS AN INTEREST-BEARING SAVINGS FUND withdrawable at any time. Dividends so left shall be credited with interest, the rate to be determined annually by the Company, but in no event to be less than three and one-half per cent, and if not withdrawn will be added to the proceeds at death, maturity or surrender.'

\*    \*    \*    \*    \*

"In his application for said insurance the insured exercised his option as to the distribution of the dividends to accrue under said policy by designating (Paragraph 12) that such dividends be ap-

plied under subdivision 'd' of Section 7 aforesaid, that is, to be left with the company to accumulate as an interest-bearing savings fund. No change was ever made by the insured as to his selection of option 'd.'

\*     \*     \*     \*     \*

"Under the provisions of said policy the first distribution of dividends determined by defendant from the portion of the divisible surplus occurring thereon was contingent upon the payment of premiums for the second policy year. The second policy year for said policy began May 6, 1930. At said time it was the practice of defendant to credit dividends on such policies as soon as the first quarterly premium, if paid quarterly, had been paid; and dividends were declared by defendant for the year commencing May 6, 1930, on policies entitled to share therein, and the amount allocated to the policy of said Elton was $16.55. Said dividend was held by defendant, as directed by the insured, to accumulate as an interest-bearing savings fund subject to withdrawal by the insured.

"On March 26, 1931, said policy had lapsed by the default of the insured in making payments of premiums due thereunder, and on said date said money order for $8.66 was returned and delivered to the plaintiff and a check for $17.25 for dividends together with interest thereon to March 26, 1931, then in the hands of defendant pursuant to the provisions of said option 'd,' was delivered to the plaintiff, who has ever since retained the same."

The insured was killed by accidental means on March 26, 1931. Plaintiff promptly thereafter demanded that defendant furnish her forms for making proof of death under the policy, but this request was refused, as was also her demand for payment of the insurance money. Upon these findings the court concluded that defendant was entitled to judgment upon the merits, and in conformity therewith the judgment here for review was entered.

As has been noted, there is no bill of exceptions or settled case, so we are limited in our review to the single question of whether the findings are sufficient to support the conclusions of law and the judgment entered pursuant thereto. Directly in point

is the case of State ex rel. Yapp v. Chase, 165 Minn. 268, 206 N. W. 396, 397. There the court quotes with approval the language used by this court in Peach v. Reed, 87 Minn. 375, 380, 92 N. W. 229, as follows:

"On an appeal from a judgment in an action tried without a jury, where there is neither a bill of exceptions, nor a settled case, the only question that can be raised is that the findings of fact by the trial judge do not support the judgment. No question as to the sufficiency of the pleadings to support the judgment can be raised. [Citing cases.] The reason for the rule is that error will not be presumed, but, on the contrary, it will be presumed that competent evidence was introduced to sustain the facts found, for the finding is of equal weight with the verdict of a jury. Knoblauch v. Kronschnabel, 18 Minn. 272 (300). And further, if the facts found are not within the issues made by the pleadings, it will be presumed, the record not showing to the contrary, that such facts were litigated by consent."

And see also cases cited in the Chase case, 165 Minn. on p. 271. To the same effect see State ex rel. Timo v. Juvenile Court, 188 Minn. 125, 246 N. W. 544, and 1 Dunnell, Minn. Dig. (2 ed. and Supp.) §§ 344, 386-387, and cases therein cited.

Plaintiff concedes the accuracy of what has just been stated but urges that the findings do not justify the conclusion reached by the trial court. Her claim is that the findings compel a judgment in her behalf. In her brief the position taken is as follows:

"This appeal presents but two questions of law:

"1. Can an insurance company declare a forfeiture when it has in its possession sufficient funds belonging to the assured to carry the policy in force beyond the date of the assured's death?

"2. Do the findings of fact, as a matter of law, show a waiver of rights of forfeiture on the part of the respondent, or is it by its action and conduct as a matter of law estopped from enforcing a forfeiture?"

■ Is there a "forfeiture" involved in the present case? It is well to bear in mind the determinative finding of the trial court

that the dividends were to be left with the company to accumulate as an interest-bearing savings fund and that this particular disposition of the fund was designated by the insured in his application for insurance. He had made no change since making the selection of this particular option. It is therefore obvious that by the terms of the insured's contract itself it would have been a breach of faith and of contract on the part of defendant if it had applied the dividend, so-called, as plaintiff would now have defendant do.

The following quotation from the case of Topinka v. Minnesota Mut. L. Ins. Co. 189 Minn. 75, 78, 248 N. W. 660, 661, negates plaintiff's claim in this regard:

"In that connection, the idea of forfeiture and all its harsh implications are much overworked. There is no forfeiture in any proper sense. The insurance has no existence from year to year except for the premium payments essential to its continuance. Mutual L. Ins. Co. v. Girard L. Ins. Co. 100 Pa. 172, 180. The insured's omission to pay a premium forfeits nothing. He but fails to exercise his option to purchase an extension. That is no more forfeiture than is the failure of a lessee to renew a lease which he has the option to renew merely by prepayment of a stipulated rent."

"Courts cannot with safety vary the stipulation of the parties by introducing equities for the relief of the insured against their own negligence." New York L. Ins. Co. v. Statham, 93 U. S. 24, 31, 23 L. ed. 789.

Pertinent here also is what the court said in Bergholm v. Peoria L. Ins. Co. 284 U. S. 489, 492, 52 S. Ct. 230, 231, 77 L. ed. 416:

"Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary and popular sense. * * * As long ago pointed out by this court, the condition in a policy of life insurance that the policy shall cease if the stipulated premium shall not be paid on or before the day fixed is of the very essence and substance of the contract, against which even a court of equity cannot grant relief. [Citing cases.] And to discharge the insured from the legal consequences

of a failure to comply with an explicitly stipulated requirement of the policy, constituting a condition precedent to the granting of such relief by the insurer, would be to vary the plain terms of a contract in utter disregard of long settled principles."

Further authorities bearing upon this question are the following: Williams v. Union Cent. L. Ins. Co. 291 U. S. 170, 54 S. Ct. 348, 78 L. ed. 443; Harden v. Occidental L. Ins. Co. 206 N. C. 230, 173 S. E. 617; Neighbors v. Union Cent. L. Ins. Co. (Tenn. App.) 69 S. W. (2d) 618; Dougherty v. Mutual L. Ins. Co. 226 Mo. App. 570, 44 S. W. (2d) 206.

Many other cases are cited by counsel for respondent, but we deem the foregoing citation of authorities sufficient.

The case of Mickleson v. Equitable L. Assur. Society, 190 Minn. 28, 251 N. W. 1, virtually supports this view and is certainly not out of harmony with what the cited cases hold.

What has already been said in respect of forfeiture applies with equal force to the so-called waiver urged by plaintiff. The court's findings are to the contrary, and we are bound by the same.

Further discussion of the cases seems unnecessary. The judgment of the trial court is undoubtedly right, and the same must be and is hereby affirmed.