**FIRST NAT. BANK OF WICHITA FALLS v. STATE LIFE INS. CO. OF INDIANAPOLIS, IND.**

No. 7799.

Circuit Court of Appeals. Fifth Circuit.

Dec. 11, 1935.

Tarlton Morrow, of Wichita Falls, Tex., for appellant.

Leslie Humphrey, of Wichita Falls, Tex., for appellee.

Before FOSTER, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

The appellant, the substituted beneficiary under two participating policies issued by the appellee, an Indiana corporation, on the life of James E. McKanna, each of those policies being dated January 19, 1926, one of them being No. 325388, and, as it was changed after its issue, for the sum of $16,326, the other, No. 325389, for the sum of $15,000, brought this action against appellee. Appellant's petition contained two counts. It appeared in this court that appellant does not now assert any claim under the first count. The second count asserts the claim that upon the failure of the insured, or another for him, to pay, within the time allowed, a renewal premium on either of the policies, which premiums became payable on January 19, 1933, it became the duty of the appellee to use part of the aggregate amount of dividends on those policies which accrued on January 19, 1933, the dividend on policy No. 325388 being $45.55, and the dividend on policy No. 325389 being $13.95, making a total of $49.50, neither dividend being sufficient to pay a quarterly dividend on the policy on which the dividend accrued, by applying $32.50 of the last-named amount to pay a quarterly premium on policy No. 325389, which would have kept that policy in force beyond May 19, 1933, the date of the insured's death, and that that policy was in force at the date of the death of the insured.

Undisputed evidence showed the following: Each of the policies stated the respective amounts of the annual, semian-

nual, and quarterly premiums thereon. In his application for each of the policies the insured stated that he wished to pay his premiums in advance. The policies provided for their ceasing and determining in case of any premium not being paid when due, unless otherwise provided, and the policy allowed a grace period of 31 days for the payment of every premium after the first one, and provided for reinstatement after default in premium payment, "upon evidence satisfactory to the Company of the insurability, and payment of all premium arrears, with interest at the rate of five per cent. per annum, and the payment or reinstatement of any indebtedness which existed at the time of such default with interest from that date." Annual premiums on the policies were paid up to January 19, 1933. The premiums due on that date were not paid. Prior to January 19, 1933, appellee sent to the insured premium notices stating the amounts of annual premium, dividend, and interest on loan due on the last-named date. On January 14, 1933, an official of appellant wrote a letter to appellee, which, after giving the numbers of the two policies, stated: "The insured under the above numbered policies wishes to increase the loan to the maximum for the purpose of paying the premiums due in January, 1933. Will you please prepare the loan notes and advise me at your earliest convenience the amount of cash necessary to complete the payment of the annual premiums."

The appellee replied to that communication by a letter showing the amounts necessary to complete payments of the net annual premiums "and advance interest on increased loan," and inclosed so-called loan agreements, with direction that insured sign those instruments "and return them to us with a total remittance for $277.66." Thereafter, there was no communication between the appellee and appellant or the insured prior to the latter's death on May 14, 1933. In accordance with a provision of the policies, when the annual premiums were paid on the policies on January 19, 1932, the appellee made loans to the insured under the usual policy loan agreements, the amount of the loan under the larger policy being $1054.55, and the amount of the loan under the smaller policy being $322.95; the amount of the loan under the larger policy being three cents less than its cash, or loan, value stated therein, and the amount of the loan under the smaller policy being all of its cash, or loan, value. Under the heading "Loans," the policies provided: "Failure to repay such loan, or to pay interest thereon when due, shall not void the Policy, unless the total indebtedness thereon shall equal or exceed the amount loanable hereunder, at the time of such failure, in which case the Policy shall immediately cease and become void: Provided, that such termination shall not take effect until thirty-one days after notice shall have been mailed by the Company, to the last known address of the insured and the assignee, if any."

Substantially the just-quoted provision was embodied in the loan agreements signed by the insured. Each of those instruments stated that, in accordance with the named policy, the appellee "has this 9th day of February, 1932, loaned" and the insured has this day received the stated amount upon the pledge of said policy and its accumulations, and each of those instruments provided for the payment of interest in advance at the rate of 5 per cent. per annum to January 19, 1933, and annually in advance thereafter. Under the heading "Participation," the policies provided: "This Policy shall participate in the surplus of the Company, * * * as apportioned by the Board of Directors of the Company, and at the end of the first year, provided the full annual premium for the second year is paid, and annually thereafter the divisible surplus so ascertained accruing thereon will be credited to this Policy as a dividend. Dividends thus credited, at the option of the owner of this Policy, shall be: First, paid in cash; or, Second, applied toward the payment of any premium; or, Third, applied to the purchase of paid-up participating additional insurance which may be surrendered at any time and the reserve value, not less than the original cash value, applied to pay current premiums; or, Fourth, left to accumulate to the credit of the Policy with interest at not less than three per cent per annum, and payable at the maturity of the Policy, or withdrawable at any time. Unless the owner of this Policy shall elect otherwise, in writing, the apportioned dividends shall be held to the credit of the Policy, in accordance with the Fourth Option, and if any premium is not paid at the expiration of the days of grace the Company will keep the Policy in force by applying said dividend accumulations to the payment due on the Policy, provided such accumulations are sufficient to pay a quarterly installment of an annual premium."

Appellee's written notices to the insured of the first year dividends on the policies contained a request that the insured place mark "X" in the space before the option chosen. The insured placed that mark before option "1. To receive the Dividend in cash; payment to be made by the Company's check." The insured did not indicate his choice as to the application of dividends declared in subsequent years otherwise than by remitting in each of the years up to and including 1932 the amount of the annual premium payable January 19, in that year, less the amount of the dividend declared in that year. On May 15, 1933, appellant wrote a letter to appellee, referring to the two policies, informing the appellee that the insured had died on May 14, 1933, and requesting form for proof of death. On May 18, 1933, appellee replied to that letter by a letter stating that it had no response to its letter of January 14, 1933, and that the premiums falling due on the policies January 19, 1933, not having been paid the policies lapsed; that all cash values on both policies, except 3 cents on policy No. 325388, had been borrowed, and there was, therefore, no extended insurance on either policy; but that there was a dividend of $45.-55 payable under the larger policy and $13.95 payable under the smaller policy; that if an administrator had been appointed appellee desired his name in order that it might forward the dividends, and if no administrator had been appointed it would consider a request of appellant, as named beneficiary, that dividends be paid to it. On June 21, 1933, appellee sent to appellant two checks, one for $13.95, the amount of the unpaid dividend on the smaller policy, the other for $45.55, the amount of the unpaid dividend on the larger policy, and 3 cents, the surrender value of that policy, each of which checks referred to the amount of it as "balance in full of all claims under Policy" the numbers of which were stated. Appellant declined to accept those checks. Appellee has kept good its tender of the amounts of those checks. On the day those checks were issued the two policies were marked canceled on a record of appellee. An official of the appellee stated in his testimony with reference to that entry:

"Said marking was a closing entry on the card. Said marking had no reference to the rights of the parties under the policy as such rights are determined by the policy contract and the defendant at all times considered the policy No. 325388 lapsed under its terms for failure to pay the premium which fell due January 19, 1933. It is the custom of the company to make its book entries at some convenient date as of the time of the due date of the defaulted premium."

"The defendant at all times has considered Policy 325389 lapsed under its terms for failure to pay the premium which fell due January 19, 1933."

Upon the attention of the official of appellant who wrote the above-mentioned letter to appellee on January 14, 1933, being called to a memorandum made by the witness on that letter reading as follows, "McKanna says policy lapsed. W. U. M.," the witness stated: "That he called McKanna and asked him whether he had paid the premiums on his policy; that McKanna said he had been unable to get the money and that unless the accumulated dividends had accrued the policies had lapsed, as he, McKanna, found it impossible to get the money to pay the premiums; that the witness then took out the correspondence between himself and the Insurance Company and looked the same over, and he, the witness, noticed that the premiums were to have been paid February 19."

Upon the conclusion of the evidence the court granted a motion of the defendant (appellee) that verdict in its favor be directed. Following a verdict pursuant to that instruction, judgment for the appellee was rendered.

The above set out provision of the policies under the heading "Participation" gave the insured the option of choosing between four stated dispositions of a dividend. The only right possessed by the insurer with reference to the application of dividends was conferred by the concluding sentence of that provision, which right was restricted by the concluding words of that sentence, "provided such accumulations are sufficient to pay a quarterly installment of an annual premium." It is quite manifest that the accumulations referred to in the just set out proviso are those accrued on the particular policy of which those words are a part. As there were no dividend accumulations on the policy sued on sufficient to pay a quarterly installment of an annual premium, the provision conferring a right, or imposing a duty, on the insurer with reference to the application of dividends is not applicable to the facts of the instant case. It may be assumed, with-

out being decided, that the insured's conduct with reference to dividends which accrued in years prior to 1933 did not amount to an election by him that dividends thereafter accruing be paid in cash. There was no evidence having any tendency to prove that the insured consented to the use of the whole or part of the 1933 dividends on the two policies to pay a quarterly premium on the smaller policy. It well may be that the insured, realizing his inability to pay the annual premium required to keep either policy in force for another year, preferred to get in cash the amounts of the two premiums to keeping the smaller policy in force for a brief period by the payment of a quarterly premium thereon, and to take a chance on getting the policies reinstated in the event of his becoming able to pay what was required to accomplish that result. The unqualified right conferred on the insured to choose any one of the four named methods of using the 1933 dividends was inconsistent with the existence of a right or duty of the appellee to use the whole or a part of those dividends in paying a quarterly premium on the smaller policy.

We are of opinion that the decision under review is supported by the decision in the case of Williams v. Union Central Life Ins. Co., 291 U.S. 170, 54 S.Ct. 348, 350, 78 L.Ed. 711, 92 A.L.R. 693, which affirmed a decision of this court. 65 F.(2d) 240. In that case, in which the court overruled a contention that a current dividend should have been applied in the reduction of an amount advanced against the policy or to the purchase of extended insurance, with the result of extending the insurance beyond the date of the insured's death, the policy, which lapsed, provided: "Or if the policy shall lapse, the dividend then due shall be paid in cash." In the instant case, the policy sued on did not provide for the disposition of the 1933 dividend in the circumstances disclosed, but conferred on the insured the right to choose between four stated methods of disposing of that dividend. As to the question of the existence of a right or duty of the insurer to use the current dividend in paying a quarterly premium on the smaller policy, the difference between the facts of the two cases is not material. Under the facts of the instant case, the insured had, and retained, the right to have the 1933 dividends paid in cash. The insurer was not empowered to destroy or impair that right by using the whole or part of the 1933 dividends in paying a quarterly premium on the smaller policy. The insurer's action in so using part of the aggregate amount of the 1933 dividends would not have constituted a valid defense to an action by the insured against the insurer to recover the amounts of those dividends. If the appellee had applied part of the aggregate amount of those dividends to the payment of a quarterly premium on the smaller policy, it would not, in so doing, have exercised the right of a creditor to apply on a debt to himself funds of the debtor in his possession or under his control, or performed the duty of preventing a forfeiture. The policies did not obligate the insured to pay the 1933 premiums. His failure to pay in that year a premium on either of those policies was merely a failure to exercise an option to keep the policy in force for an additional period by paying a premium within the time allowed, and, not having acquired the right to extended insurance, nothing was forfeited by his failure to pay such premium. Elton v. Northwestern Nat. Life Ins. Co., 192 Minn. 116, 255 N.W. 857. Upon the insured's failure to pay any premium on the policy sued on within the time allowed by the policy for keeping it in force by the payment of a premium, the policy lapsed, without any action whatever on the part of appellee. That policy was not revived or kept alive by appellee's failure to communicate with the insured after the lapse occurred. Neither of the so-called policy loans made to the insured upon a pledge of the policy and its accumulations created a "personal liability" or a "debt" of the insured, and in substance each of those so-called loans was a payment, not a loan. Williams v. Union Central Life Insurance Co., supra, 291 U. S. 170, at pages 179, 180, 54 S.Ct. 348, 78 L.Ed. 711, 92 A.L.R. 693. The provision of the policies conferring on the appellee the right (which was exercisable in the circumstances of the instant case) to terminate the policies upon the insured's "failure to repay such loan, or to pay interest thereon when due," when "the total indebtedness thereon shall equal or exceed the amount loanable hereunder, at the time of such failure," is inconsistent with appellee being under a duty to keep the smaller policy in force by applying part of the aggregate amount of the dividends which accrued on the policies in 1933 to the payment of a quarterly premium on the smaller policy.

Counsel for the appellant contended that the claim asserted in this suit was

503

supported by the decision in the Texas case of Timmerman v. Bankers' Reserve Life Co., 122 Tex. 603, 63 S.W.(2d) 687, 688, and that Texas decisions are controlling in the instant case. In the just-cited case it was decided that the insurer was under a duty to apply accrued "annuity benefits" or premiums to the payment of a premium note on the maturity of such note, which provided that if it was not paid at maturity the policy for the premium on which the note was given "shall be ipso facto null and void, without notice to the maker hereof." The facts of that case differ materially from those of the instant one, in that the insured in the cited case owed a debt to the insurer upon which the latter had the right to apply funds of the debtor in its custody, while in the instant case the insured was not indebted to the insurer. The following statements contained in the opinion rendered in the cited case show that the court which decided that case recognized the difference between that case and such a case as the instant one. "It is true that a premium on an insurance policy is not a debt in the sense that the insurance company can enforce payment of the same. * * * Where, however, the assured executes his note for the premium, the same constitutes a debt which in law he can be compelled to pay." Even if the cited decision or other Texas decisions properly could be regarded as supporting the claim asserted in the instant case, a question as to the rights or duties of an insurer under a life insurance policy being one of general commercial law, decisions of Texas courts on such a question are not controlling in this, court. Home Ins. Co. v. Currie (C.C.A.) 54 F.(2d) 203, 205; Fountain & Herrington v. Mutual Life Ins. Co. (C.C.A.) 55 F.(2d) 120.

Affirmed.