## JULIANE NORDBY v. CENTRAL LIFE INSURANCE COMPANY OF ILLINOIS.[1]

December 10, 1937.

No. 31,477.

*George A. Lewis,* for appellant.

*R. H. Fryberger,* for respondent.

[1]Reported in 276 N. W. 278.

HOLT, JUSTICE.

Plaintiff appeals from an adverse judgment. The trial was to the court, upon whose findings the judgment appealed from was entered. Plaintiff moved in the alternative for amended findings or a new trial, but no case or bill of exceptions was ever settled. This appeal therefore resolves itself into questions of law as to the construction of the terms of a life insurance policy upon which the action is brought, which together with the application therefor are inserted *in extenso* in the pleadings and findings.

Of the facts found, the following are deemed sufficient for an understanding of the questions presented for decision: On August 28, 1923, defendant, in consideration of an annual premium of $69.75, issued its policy insuring the life of plaintiff's husband for her benefit in the sum of $3,000. The insured died December 17, 1933. The premium payable August 28, 1933, was not paid. The policy by its terms expired on August 28, following its issue, unless the annual premium for another year was then, or within the grace period, paid. It also contained a provision that at the end of the first policy year the company would determine or apportion to the policy the annual dividend which the insured has the option to receive, either (1) in cash, or (2) to apply upon the payment of premium, or (3) to the purchase of additional paid-up insurance, or (4) to be left with defendant to accumulate as a credit of the policy with three and one-half per cent interest per annum payable at maturity of policy, but withdrawable at any time. If the insured did not elect, within three months after mailing of notice of the allocation of the dividend, to declare a choice of one of the four dispositions to be made thereof, it shall be paid to the legal policyholder in cash. The court found that as of August 28 of each year, beginning with the year 1924 and ending with August 28, 1932, defendant apportioned the dividend earned each preceding policy year to this policy and, by mail, requested the insured to designate the disposition thereof; that the insured failed and neglected within three months after receipt of such notice to notify defendant what disposition should be made of such dividend, except that the dividend apportioned to this policy on August 28, 1929, the insured re-

quested paid in cash and the same, amounting to $13.71, was remitted to him on September 25, 1929, and also the dividend apportioned to this policy as of August 28, 1925, in the sum of $9.15, which, at the request of insured, was applied upon the payment of the premium due August 28, 1925. As to each of the other annual dividends apportioned to this policy, defendant, when receiving no direction for its disposition from the insured, sent him by mail a certificate of deposit, dated and signed by defendant's president and secretary, stating that the dividend due on the date named in a specific amount upon the policy, giving its number, had been deposited with defendant, payable to the order of self in current funds on return of the certificate properly indorsed "with interest at the rate of 3½ per cent per annum if left six months and for all full months thereafter." In the application for the policy the insured could have designated the disposition of the annual dividend. He did not do so. With the exceptions stated, the insured received the dividend certificates and placed them in an envelope with the policy and kept these with the deed to his house and other documents deemed valuable in a writing desk in the home, always accessible to the insured and plaintiff. The court found that the insured knew the value and use of these dividend certificates. The insured was indebted to defendant to the full extent of the surrender value of the policy from and after July 28, 1932, which was unpaid at his death. In September, 1933, and within the grace period, the insured wrote defendant advising of his inability to pay the premium and asking whether or not the insurance would be kept in force. Defendant, within the grace period, answered that the policy would lapse, but advised him that, as another policy year had passed, the policy would have a value in addition to the $303 he had borrowed thereon, and that defendant would be willing to loan him an additional amount up to the loan value of the policy, but in order to do that it was necessary for him to pay $51. The insured did not accept the offer, did not pay anything, and made no further request or inquiry; and so defendant applied the cash surrender value of the policy in payment of the loan. After the insured's death, plaintiff requested defendant to pay the dividend certificates

mentioned, and these, with interest, amounting to $96.53, were paid to her; but later she tendered back the money so received, under the claim that the policy was in effect when the insured died. The 17th finding is deemed decisive of the appeal and is, in substance, that the insured, having failed within three months after being notified to select what disposition should be made of the annual dividends, the defendant elected to issue the negotiable certificates of deposit evidencing the dividends, which the insured could keep, or would have the right to apply toward the payment of his premiums, or use as cash, and that by reason of the practice as between the parties covering a number of years, they had elected to thus dispose of the dividends, and such certificates of deposit were accepted and retained by the insured in lieu of cash; that they were negotiable, and hence the insured and plaintiff would be estopped from claiming that the delivery of the certificates was other than payment by defendant of cash for the respective dividends; that the right was in the insured to negotiate the certificates of deposit into the hands of third parties, hence it cannot be held that defendant had cash in its possession to apply to premiums due from time to time. The court also found that the insured was an educated businessman of experience.

Since there is neither a bill of exceptions nor settled case, the error assigned upon the court's action in dismissing the jury and trying the case as a court case is of no avail. The record shows no objection or exception by plaintiff to a trial by the court.

For like reason, the only assignment of error to be considered, on the merits of the appeal, is whether the conclusions of law, pursuant to which the judgment was entered, are based upon and justified by the facts found. We regard the facts conceded by the pleadings and found by the court so nearly like those involved in Elton v. Northwestern Nat. L. Ins. Co. 192 Minn. 116, 255 N. W. 857, that like conclusions of law, adverse to plaintiff, rightly follow here. There, as here, the policy lapsed, unless the insurance company could and should have applied, in that case, the cash accumulation, in the fourth option above referred to, and in the instant case, the certificates of deposit, representing the accumulations, under the

same option four, or the cash that might be sent the insured when no direction was given. The only difference is that in the Elton case the insured in his application for the policy elected to place the annual dividends in the fourth option, and in the case at bar the parties by the certificates of deposit placed the dividends in the same option in a slightly different form. The finding of estoppel above referred to cannot be disturbed, because there is no settled case. Had these dividends been placed to the credit of the policy under the fourth option, by direction of the insured, or because of his failure to elect, there could have been no application thereof to the payment of premiums in the absence of the direction of the policyholder, according to the Elton case.

Plaintiff contends that the certificates of deposit, at least those which had been outstanding for some time, had lost their negotiability within the purview of the uniform negotiable instruments law. This does not appear of any importance, for they were assignable. The insured could at any time have passed good title to any of them, and the transferee would have the undoubted right to recover the face value of defendant. Suppose defendant had assumed to apply these certificates to the payment of the premium due August 28, 1933, without the insured's direction, and he thereafter had concluded to sue defendant to recover on the certificates in his possession, could defendant have successfully defended or offset the amount paid on the premium? We think not.

Plaintiff asserts that "in the absence of any stipulation in the policy, or directions to the contrary by the insured, as to the application of dividends which have been declared, it is the duty of the insurance company to apply such dividends, or any other funds due the insured, to the payment of interest on loans made on the policy or on premiums due thereon, when by so doing a forfeiture of all rights and benefits under the policy will be prevented." And in support are cited Equitable L. Assur. Soc. v. Roberts, 226 Ala. 8, 145 So. 157; Chayer v. Metropolitan L. Ins. Co. 272 Mich. 652, 262 N. W. 430; Ruderman v. Massachusetts Acc. Co. 120 N. J. Eq. 251, 184 A. 520; Manufacturers Trust Co. v. Equitable L. Assur. Soc. 244 App. Div. 357, 279 N. Y. S. 457; Allen v. Register L. Ins. Co.

38 Ohio App. 562, 176 N. E. 588; American Ins. Co. v. Hopkins (Tex. Civ. App.) 89 S. W. (2d) 293. The Alabama case does not aid plaintiff, for the facts there show a request by the insured to apply dividends in payment of premiums, revoking a previous request, not acted upon, to apply the same upon a loan on the policy. The Michigan and New Jersey cases are not at all like the facts in the instant case. The one from New York cites with approval Elton v. Northwestern Nat. L. Ins. Co. 192 Minn. 116, 255 N. W. 857, and is therefore in defendant's favor. In the Ohio case there was a clear intention of the insured that the check he sent (retained by the company) was to be used as a premium payment, and since the insured could pay premiums quarterly or semiannually as well as annually, the court held the check retained was sufficient to pay the quarterly premium, keeping the policy in force for a period within which the insured died. In the Texas case the insured, a farmer, had a tornado policy and a fire insurance policy. He had paid part of the premiums in cash when the policies were delivered November 12, 1932, and had given two notes for the balance, one becoming due in August, 1933, and the other in June, 1934. A windstorm on May 14, 1933, destroyed the insured property, causing a loss of $112.53, which had not been paid when his premium note for $38.88 came due August 1, 1933. On September 5, 1933, fire completely destroyed the buildings left by the storm. The court there held the company should have applied the amount due the insured for the storm loss upon the notes given in partial payment of the premiums. In addition to the cases cited and discussed in the Elton case, we cite First Nat. Bank v. State L. Ins. Co. (C. C. A.) 80 F. (2d) 499, which approves the reasoning of the Elton case. It is to be noted that defendant has not forfeited the policy or any rights thereunder. It is always optional with the insured to cease paying the annual premium. He is under no obligation whatever to pay the same. There was an obligation on defendant to pay to the policyholder the annual dividends apportioned to this policy, and it could not use such dividends to pay the premium of August 28, 1933, without the insured authorizing or directing that to be done.

Judgment affirmed.